Linda HOLMES, et al., Plaintiffs–
Appellants,

v.

CITY OF MASSILLON, OHIO, et
al., Defendants–Appellees.

Nos. 94–3208, 94–3768.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1995.

Decided March 13, 1996.

Edward L. Gilbert (argued and briefed), Edward L. Gilbert Co. LPA, Akron, OH, for plaintiffs-appellants.

Dale F. Kainski (argued and briefed), Burke, Kainski & Van Buren, Akron, OH, for defendants-appellees.

Before: KEITH, JONES, and BOGGS, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff–Appellant, Linda Holmes, appeals the district court's order granting a new trial to Defendant–Appellee, police officer George Fabianich, on Holmes' claim of excessive force. In addition, Holmes' attorney, Edward Gilbert, appeals the district court's order sanctioning him for unreasonably and vexatiously multiplying the litigation in violation of 28 U.S.C. § 1927. For the reasons discussed below we **REVERSE** the district court order granting a new trial to the defendant and **REMAND** the case back with instructions that the verdict and judgment in plaintiff's favor on the excessive force claim be reinstated. In addition, we also **VACATE** the district court order sanctioning Gilbert pursuant to 28 U.S.C. § 1927.

## I. STATEMENT OF THE CASE

This case has a long and arduous history that has generated animosity not only between the opposing litigants but also, unfor-tunately, between their attorneys. The events which form the basis of this action occurred on September 20, 1987, when Linda Holmes went to the Massillon Police Department to discuss a matter unrelated to this lawsuit. While Holmes was at the police station, she was advised that an active bench warrant had been issued for her arrest. The warrant had been issued because Holmes had failed to appear before the court on a minor misdemeanor charge for failing to vaccinate her dog for rabies. Upon hearing that she would be arrested, Holmes became agitated and repeatedly claimed that the arrest warrant was invalid.[1]

After Holmes was placed under arrest, she was turned over to Sergeant George Fabianich for booking. Officer Fabianich informed Holmes that she would have to post a cash bond or plead guilty and pay a fine in order to be released. Holmes did not have the cash available to post the required bond or pay the waiver fee. As a result, she was told that she would be held overnight pending her arraignment in the morning.

The parties are in dispute as to what happened next. Holmes claims that she was ordered to remove all of her personal property and that she complied with this order except for removing her wedding ring. She asserts that she could not remove her wedding ring because her fingers were swollen on account of her retaining water. Holmes contends that when she could not remove her wedding ring, Fabianich became verbally abusive towards her. She recalls that when this happened, another officer (Officer Layne) suggested that Holmes use soap and water to help remove the ring. However, Holmes contends that before she could reach the sink area to use soap and water to remove the ring, Fabianich grabbed her wrist and began pulling on her finger. Holmes asserts that this continued for five minutes until Fabianich was finally able to remove the wedding ring.

Fabianich, disputing Holmes' testimony, asserts that Holmes was verbally abusive to him as she was being booked. He claims

---

1. Thereafter, it was discovered that the arrest warrant was indeed invalid and should not have been in the active warrant file.

that he warned Holmes that he would charge her with obstructing police business if she failed to cooperate with his instructions. He also contends that Holmes did not tell him that her fingers were swollen until after she had refused to cooperate with his orders for quite some time. Fabianich admits that he pulled Holmes' wedding ring off of her finger near the sink area but asserts that he did this only after Holmes had washed her hands and that the ring came off without any difficulty.

After the wedding ring was removed, Holmes was then escorted to the female cell area where she spent the night in jail. Holmes claims that on account of Fabianich removing her ring, her ring finger was bruised and swollen and she sustained injuries to her wrist. Holmes also alleges that she was not given privacy during her incarceration and that the following morning she was forced to remain in her jail cell while a Terminix employee sprayed the cell with an insecticide.

Fabianich and Layne do not recall seeing any injuries to Holmes' finger or wrist and assert that she did not seek medical attention. In addition, Fabianich claims that he was not on duty when the jail cell was treated with insecticide and denies depriving Holmes of privacy during her incarceration.

As it turns out, Fabianich did charge Holmes with obstructing police business for her alleged refusal to cooperate with his instructions. This charge was subsequently amended, upon the state's motion, to a disorderly conduct charge. Holmes was initially found guilty of this charge but the conviction was reversed and the charge ordered dismissed on appeal.

On August 29, 1988, Linda Holmes along with her husband John, commenced a civil rights action based on her arrest by the Massillon Police Department on September 20, 1987. The complaint as amended set forth eleven causes of action against: (1) the City of Massillon; (2) Francis H. Cicchirelli, Mayor of Massillon; (3) Bill Hamit, Director of Public Safety & Service for City of Massillon; (4) Dennis Harwig, Chief of Police for the City of Massillon; and (5) George Fabianich, Police Officer for the City of Massillon.

The causes of action included: (1) a federal claim of false arrest (Count 1); (2) a federal claim of malicious prosecution (Count 2); (3) a federal claim of false imprisonment (Count 3); (4) a federal claim of cruel and unusual punishment (Count 4); (5) a federal claim of harassment (Count 5); (6) a pendent state claim of malicious prosecution (Count 6); (7) a pendent state claim of intentional infliction of emotional distress (Count 7); (8) a pendent state claim of loss of consortium (Count 8); (9) a pendent state claim of false imprisonment (Count 9); (10) a federal claim of unreasonable force (Count 10); and (11) a federal claim of failure to train police (Count 11).

On December 26, 1989, the first scheduled trial of the case ended in a mistrial upon the consent of all the parties. At that time, the district court dismissed with prejudice Count Five of the complaint and accepted the plaintiffs' voluntary dismissal of defendants Bill Hamit and Francis Cicchirelli from the lawsuit.

On May 9, 1991, the case again proceeded to trial. This time, at the close of all the evidence, the court allowed only two causes of action—the federal claim of excessive force and the pendent state claim of malicious prosecution—to proceed to the jury. Both of these claims were only allowed to proceed against Officer Fabianich in his individual capacity. All of the other claims against all of the other defendants were dismissed before the jury was allowed to deliberate on the case.

On May 17, 1991, the jury returned a verdict in favor of Holmes on both the excessive force claim and the malicious prosecution charge. The jury awarded Holmes compensatory damages of $50,000.00 against Officer Fabianich on the excessive force claim, and compensatory damages of $100,-000.00 and punitive damages of $100,000.00 against Officer Fabianich on the malicious prosecution claim.

On September 17, 1991, the district court ordered a new trial on the two counts upon which verdicts were rendered. The district court found that the jury's verdict had been (1) subject to possible prejudice by the jury's

consideration of evidence relating to counts which had been dismissed by directed verdicts and (2) not supported by the weight of the evidence. The plaintiffs appealed this ruling, but the appeal was dismissed by this Court because there was no final appealable order.

Before the third trial, Fabianich again moved for summary judgment. This time the district court dismissed the state malicious prosecution claim against Fabianich after discovering that Ohio state law provided a complete defense for him. As a result, the sole focus of the third trial was the excessive force claim against Officer Fabianich in his individual capacity.

The third trial commenced on September 21, 1993. On September 24, 1993, however, the district court judge ordered a mistrial after the plaintiff's attorney (Edward Gilbert) asked Officer Fabianich questions about previous civil suits filed against him.

Fabianich filed a motion with the district court seeking the imposition of sanctions and a finding of contempt against Gilbert, pursuant to 18 U.S.C. § 401 and 28 U.S.C. § 1927, for Gilbert's alleged improper line of questioning. The district court sent the motion to a magistrate judge, who considered the motion and recommended that Gilbert be found in contempt of court and be sanctioned in the amount of the attorney's fees and court costs incurred by Officer Fabianich because of the mistrial.

On January 21, 1994, before the start of the fourth trial in this case, the district court granted Fabianich's renewed motion for summary judgment on the excessive force claim, finding this time that Holmes had failed to set forth a constitutional claim under the 14th Amendment.

Thereafter, on February 25, 1994, the district court adopted the magistrate's recommendation that Gilbert be held in civil contempt and sanctioned, pursuant to § 1927, for "unreasonably and vexatiously" multiplying the proceedings. The district court subsequently awarded Fabianich $15,811.27 in

attorneys fees and litigation expenses. Holmes subsequently filed a timely notice of appeal to this court.

## II. DISCUSSION

On appeal, Holmes argues first that the district court abused its discretion by ordering a new trial after the jury returned a verdict in her favor. In the alternative, Holmes asserts that the district court erred by granting summary judgment before the start of the fourth trial on the excessive force claim. Because we determine that the district court abused its discretion in granting a new trial, we do not reach the question of whether summary judgment was appropriate on the excessive force claim before the start of the fourth trial.[2] In addition, we also find that the district court abused its discretion in sanctioning Gilbert for unreasonably and vexatiously multiplying the litigation in violation of 28 U.S.C. § 1927.

### A. New Trial

■ This court reviews a granting of a motion for a new trial under an abuse of discretion standard. *Tobin v. Astra Pharmaceutical Prod., Inc.,* 993 F.2d 528, 542 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993). The phrase, "abuse of discretion", is generally regarded as a "definite and firm conviction [on the part of the reviewing court] that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Balani v. Immigration and Naturalization Service,* 669 F.2d 1157, 1160 (6th Cir.1982) (quoting *McBee v. Bomar,* 296 F.2d 235, 237 (6th Cir.1961)).

■ Pursuant to Federal Rule of Civil Procedure 59(a) a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a

---

**2.** In addition, since Holmes only appealed the granting of a new trial as to the excessive force claim, we do not review whether a new trial

should have been granted as to the malicious prosecution claim.

"seriously erroneous result" as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940); *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir.1983).

■ In the instant case, the district judge granted a new trial because he felt that the jury had been prejudiced by evidence that was allowed into the trial but was not related to the excessive force claim. The judge thought that the jury's prejudice had been demonstrated by its verdict—a verdict he felt was not supported by the evidence. Specifically, the judge believed that the jury improperly considered testimony by Holmes that (1) she was denied privacy in her jail cell, (2) she was detained in her cell while it was sprayed with insecticide, and (3) she was unjustly and maliciously charged with obstructing justice—a claim that was later changed to disorderly conduct.

However, there was little chance, given the nature of the claims, that the jury's verdict was affected by Holmes's testimony as to these incidents. For instance, Holmes' statement that she was forced to remain in her cell while it was sprayed with an insecticide would not have prejudiced Fabianich because the jury had been instructed earlier that the insecticide spraying incident did not happen until after Fabianich was off duty.[3] Thus, it would not have been likely that the jury would have held Holmes' allegation of this incident against Fabianich. Moreover, lack of privacy and malicious prosecution claims are distinctly different causes of action than an excessive force allegation and we will not assume, in the absence of evidence to the contrary, that the jury was unable to comprehend this fact. Indeed, in light of the fact that we often presume juries are capable of distinguishing evidence relating to separate

defendants in multi-count multi-defendant drug conspiracy cases, it would be disingenuous for us to assume that a jury in this case was unable to distinguish the evidence relating to the different claims. *See, e.g., United States v. Sivils*, 960 F.2d 587, 594 (6th Cir.), *cert. denied*, 506 U.S. 843, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992); *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986) and 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986).

■ Furthermore, even if the irrelevant evidence could have incited prejudice, we find that such prejudice would have been cured by the judge's limiting instructions to the jury. The district judge, at the close of all the evidence, read the jury the following instructions:

> During the course of trial certain issues were removed from the ultimate consideration of the jury. The court will instruct you on the claims and issues remaining. You are not to include in your deliberation any evidence introduced by either party which relates to any claim not specifically before you for consideration. You will receive at the conclusion of this trial and prior to your deliberations a copy of these instructions as well as a number of verdict forms. The verdict form will indicate the claim to be the subject of your verdicts. You must consider those alone and only that evidence relating to them. You shall not consider any claim not before you for decision even though evidence has been offered to support that claim. Nor shall you consider the evidence offered to support a claim not before you unless it is found by you to have bearing on a claim properly the subject of your deliberations as indicated in the course of these instructions.

Jury Instructions at 12. The jury was then given these instructions in writing to aid them in their deliberations.

■ Although prejudice that affects the fairness of a proceeding can certainly be

---

**3.** Moreover, the judge also told the jury that they should only consider events which occurred on September 20, 1987. The insecticide spraying incident did not occur until the morning of September 21, 1987.

grounds for a new trial, when "such prejudice is cured by instructions of the court, the motion for a new trial should be denied." *Clarksville–Montgomery County Sch. Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir.1991); *see also, e.g., Smith v. Travelers Ins. Co.*, 438 F.2d 373, 375 (6th Cir.), *cert. denied*, 404 U.S. 832, 92 S.Ct. 79, 30 L.Ed.2d 62 (1971) (holding that in light of the curative instructions given by the district court and the context of the entire record, the improper comments of the plaintiff's attorney were not so prejudicial as to warrant a new trial); *Gandy v. Sullivan County*, 24 F.3d 861, 866 (6th Cir.1994) (reasoning that a new trial was not required because "[i]n sum, the two alleged errors were ameliorated by the jury charge at the close of the trial").

Here, the judge specifically admonished the jury to disregard any evidence that did not relate to the excessive force or malicious prosecution claims.[4] We find it error to infer that the jury did not or could not follow the judge's clear instructions in this regard. *See, e.g., Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions ... and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."); *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1059 (10th Cir. 1983) (in finding that damages award was not excessive the court stated, "we will not impute to a jury the inability to understand correctly the total instructions of the trial court; nor will we impute nonfeasance ..."); *United States v. Gomez–Pabon*, 911 F.2d 847, 858 (1st Cir.1990), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991) ("There is ordinarily a presumption that a jury will follow [a court's] curative instructions."). As a result, any prejudice that could have been present against Fabianich was completely cured by the judge's instructions to the jury.

Since a new trial was not warranted on the grounds of prejudice, we next must determine whether the verdict was against the weight of the evidence or the damages were excessive. Generally, when a district court determines that a verdict is against the weight of the evidence, that court has a duty to grant a new trial in order to prevent a miscarriage of justice. *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.), *cert. denied*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). However, in reviewing a trial court's decision in this regard we must closely scrutinize the trial court's justifications in order to protect the litigant's right to a jury trial. *Id.* at 54. For as we discussed in *Duncan*,

> Where no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts.

*Id.* (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d. Cir.) (en banc), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960)); *see also Hutchinson v. Stuckey*, 952 F.2d 1418, 1421 (D.C.Cir.1992) (quoting *Vander Zee v. Karabatsos*, 589 F.2d 723, 729 (D.C.Cir.1978)) (commenting that a trial court's decision to grant a new trial raises a "concern that a judge's nullification of the jury's verdict may encroach on the jury's important fact finding function"). Accordingly, this Circuit has determined that a jury's verdict should not be overturned as being against the weight of the evidence unless that verdict was unreasonable. *See Duncan*, 377 F.2d at 52; *J.C. Wyckoff & Assocs. Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir.1991) (holding motion for new trial should be denied if the verdict could reasonably have been reached);

---

4. Moreover, we do not assume, as the district court did, that evidence relating to the malicious prosecution claim would have influenced the jury in its deliberations on the excessive force charge.

*see also Berner v. British Commonwealth Pacific Airlines, Ltd.,* 346 F.2d 532, 538 (2d Cir.1965), *cert. denied,* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966) (reversing a district court order for a new trial and noting, "[o]nce the case went to the jury, its verdict should not have been upset, if reasonable men could find in defendant's favor, as they certainly could here.").

■ In the instant case, the district court determined that the evidence did not support a finding of excessive force because the record did not disclose evidence of extensive physical damage, *i.e.,* no broken bones or large medical bills. We disagree and find that a reasonable juror could find for Holmes on the excessive force claim.

Holmes asserted that when she could not originally take her ring off, Fabianich "got into her face" and began screaming and cursing at her. She believed that he was going to hit her. She stated that soon after this Fabianich grabbed her wrist and began wrenching at her finger in an attempt to remove her ring. This wrenching continued for about five minutes, during which time Holmes was in extreme pain and continued to plead with Fabianich to stop.[5] Fabianich, on the other hand, admitted pulling the ring off of Holmes' finger but stated that he only did this after she had applied soap and water to her hands. Neither Fabianich nor Officer Layne recalled seeing any injuries to Holmes' wrist or finger.

■ If we believe Holmes' version of the facts, as the jury must have done, it is not unreasonable to conclude that Fabianich's use of force was excessive. According to her, she did nothing to provoke Fabianich's abusive behavior and was subjected to intense physical pain from his actions. Although the alleged use of force was not life threatening, it did not have to be in order to be deemed excessive. There is no requirement that the physical contact between Fabianich and Holmes had to leave extensive marks in order for the amount of force used by Fabianich to be considered excessive. *See Williams v. Boles,* 841 F.2d 181, 183 (7th Cir.1988) ("[A] state is not free to inflict ...

pains without cause just so long as it is careful to leave no marks."). Indeed, courts have recognized excessive force claims in cases where the alleged use of force did not even involve physical contact. *See Cornwell v. Dahlberg,* 963 F.2d 912, 915 (6th Cir.1992); *Martin v. Board of County Comm'rs,* 909 F.2d 402, 406 (10th Cir.1990). *But see Johnson v. Morel,* 876 F.2d 477, 479–80 (5th Cir. 1989) (concluding that significant injury is an element of an excessive force claim).

■ Moreover, the absence of medical bills was not dispositive in regards to assessing the harm that may have been caused by Fabianich's actions. The jury awarded Holmes $50,000 in compensatory damages to cover not only the physical pain suffered on account of Fabianich's actions but also to compensate her for the emotional harm caused by being deprived of her constitutional rights by a law enforcement officer. *See Pembaur v. City of Cincinnati,* 882 F.2d 1101, 1104 (6th Cir.1989) (noting that compensatory damages include out of pocket expenses as well as personal humiliation, mental anguish and suffering). Holmes testified that because of her experience she was injured physically, was left unable to perform many of her daily activities and had become terrified of the police. This court is not insensitive to the mental anguish that can affect a victim of police brutality and we realize that this emotional harm can often be quite difficult to measure in mere monetary terms.

■ In short, this case came down to a question of who the jury believed—Fabianich or Holmes. Both sides were able to present their version of the facts to the jury and the jury was aware of the fact that Holmes did not have large medical bills to support her allegations. Nonetheless the jury, after considering all of the evidence, found for Holmes and awarded her $50,000.00 in compensatory damages. This figure included physical as well as emotional pain and suffering and cannot be found on its face to be unreasonable or excessive. Consequently, since a reasonable juror could find for Holmes on the

---

**5.** Holmes also testified that on account of her water retention problem she could not remove her ring from a previous marriage and eventually had to have it cut off her finger.

excessive force claim we reverse the district court's decision granting a new trial.[6]

## B. Sanctions Under 28 U.S.C. § 1927

■ Plaintiff's counsel, Edward Gilbert, was sanctioned, pursuant to Title 28 U.S.C. § 1927, for unreasonably and vexatiously multiplying the litigation.[7] We review a trial court's order awarding attorney's fees for abuse of discretion. *In re Ruben*, 825 F.2d 977, 984 (6th Cir.1987).

■ Pursuant to 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In this Circuit, we have determined that the application of § 1927 is warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *In re Ruben*, 825 F.2d 977, 984 (6th Cir.

1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). However, the attorney's misconduct, while not required to have been carried out in bad faith, must amount to more than simple inadvertence or negligence that has frustrated the trial judge. *Id.*; *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir.1992).

■ The events which formed the basis of the district court's sanctions order against attorney Gilbert occurred during the third trial. During that trial, Gilbert sought permission from the court to question Fabianich about the existence of several prior civil suits filed against Fabianich for misconduct. Gilbert asserted that he should be able to ask about the prior suits since the defense had previously questioned Fabianich—purportedly to show knowledge of police procedure—about certain aspects of his police training. The district court determined that Gilbert's line of questioning was not permissible at that time. The court stated,

> I think what perhaps you are asking is kind of anticipatory. Should that evidence come out, maybe we should take a second

---

**6.** A final point which we are compelled to address is whether a new trial should have been granted because the district court committed plain error in instructing the jury. The district court instructed the jury that Fabianich's use of force could be deemed excessive in violation of the Fourth Amendment if it was unreasonable. Fabianich, in a summary judgment motion before the start of the fourth trial, asserted for the first time that his actions could only be deemed unlawful if done to punish Holmes in violation of the Fourteenth Amendment. The district court granted Fabianich's motion after determining that the Fourteenth Amendment was the appropriate standard to assess Holmes' excessive force claim and that under that standard Holmes' claim could not pass summary judgment.

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that an arrestee's claim of excessive force should be analyzed under the Fourth Amendment. *Id.* at 395, 109 S.Ct. at 1871. However, in a footnote, the Court indicated that it was not resolving the question of whether a pretrial detainee could bring an excessive force claim under the Fourth Amendment. *Id.* at 395 n. 10, 109 S.Ct. at 1871 n. 10. Since *Graham*, although a number of other Circuits have addressed the issue, this Circuit has failed to determine whether a pretrial detainee can bring a Fourth Amendment excessive force claim.

However, we do not have to deal with this issue today since neither party has argued that the jury was instructed erroneously under the Fourth Amendment. Since the judge's instructions to the jury were never argued as being erroneous, we can only review them for plain error. *Rodgers v. Fisher Body Div. General Motors*, 739 F.2d 1102, 1106 (6th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985). Plain error is defined as egregious error that "leads to a miscarriage of justice." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 156 (1989) (citing *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985)). Since the law of this Circuit is unclear as to whether a pretrial detainee can bring a Fourth Amendment excessive force claim or even as to when an arrestee clearly becomes a pretrial detainee, we cannot hold that the trial court committed plain error in instructing the jury (in the 1991 trial) under the Fourth Amendment standard.

**7.** Although the district court also found Gilbert in contempt of court in violation of 18 U.S.C. § 401, the district court order only awarded sanctions to Fabianich under 28 U.S.C. § 1927. As a result, the sole issue before this court is whether sanctions were appropriate under 28 U.S.C. § 1927.

look at it. I don't think it's permissible at this stage at least, the three lawsuits. But if the evidence develops the way you say it is, then we'll look at it. That may have a bearing, I don't know.

Gilbert later questioned Fabianich about the past suits. The court immediately declared a mistrial on motion by Fabianich. Following a later motion for sanctions, the court found that Gilbert unreasonably and vexatiously multiplied the litigation and should be made responsible for the costs precipitated by the mistrial.

From the record we discern that Gilbert asked the district judge for permission to question Fabianich on the prior suits because he felt that Fabianich's attorney was going to paint Fabianich as "a saint" with an exemplary record. The judge responded to Gilbert by telling him that his concern was anticipatory but could require a second look later on. From this exchange, Gilbert claims that he was left with the impression that the previous civil suits could become relevant at some juncture. Although Fabianich's counsel did not subsequently put Fabianich's character directly at issue, we find that his line of questioning—which elicited a statement from Fabianich that he served as a Massillon auxiliary officer for $1 a year—could have reasonably been interpreted by Gilbert as relating to Fabianich's good character.[8] Thus, after Fabianich's counsel conducted direct examination of Fabianich, Gilbert could have reasonably believed that the prior lawsuits had become of some relevance to the case.[9]

In addition, although we find that Gilbert should have consulted the district judge as to whether the door was open in regards to the previous suits, we conclude that his actions were not, as the district court determined, clearly intended to produce a mistrial and thus delay the proceedings. It may well be, given that the questioning was in the heat of cross-examination, that Gilbert believed that he should now be free to question Fabianich about the prior suits. We do not believe that such conduct on the part of Gilbert vexatiously or unreasonably multiplied the proceedings. There was no prior indication or warning that his conduct, even if beyond the bounds of propriety, would precipitate the mistrial and additional proceedings.

As this court stated in *In re Ruben,* "care must be taken in assessing attorney's fees under section 1927 lest attorneys be deterred from their duty to 'represent [a] client zealously . . .' " *Ruben,* 825 F.2d at 983 (quoting MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 7–1 (1980)). Here, Gilbert's actions did not amount to provoking a mistrial deliberately, especially in light of the court's discussion that indicated Gilbert might be able to secure permission to pursue the proposed line of questioning. Consequently, the district court's order sanctioning Gilbert is vacated.

### Conclusion

For the foregoing reasons, the judgment in favor of defendant is **VACATED,** the order granting defendant a new trial is **REVERSED** and the case is **REMANDED** back with instructions that the verdict and judgment in plaintiff's favor on the excessive force claim be reinstated. In addition, the district court order sanctioning Gilbert, pursuant to 28 U.S.C. § 1927, is **VACATED.**

---

8. On direct examination, Fabianich's counsel asked Fabianich when he first became involved in police enforcement. Counsel then asked Fabianich whether he received any compensation for his first law enforcement position. Fabianich responded that he received a dollar a year. Counsel's clear intent in asking the amount of compensation that Fabianich received was to show him as a noble civic servant who would work for a $1 a year. It was not at all related, as counsel contends, to Fabianich's knowledge of police procedure or protocol.

9. The magistrate judge pointed out that Gilbert had been precluded from questioning Fabianich about the previous suits in the 1991 trial as well. However, the court's order in that regard is not relevant here because Gilbert sought to introduce the suits for different reasons, *i.e.,* to show a lack of police policy and to show similar acts. In the instant case, Gilbert sought to introduce the prior suits in order to rebut what he felt was evidence of Fabianich's good character.