**Marcellette REYNOLDS, as the Personal Representative of the Estate of Stephen Neal, Plaintiff–Appellant,**

v.

**Harry GREEN, Correctional Officer, Detroit Woodward Corrections Center, Defendant–Appellee.**

No. 00–1089.

United States Court of Appeals, Sixth Circuit.

Dec. 5, 2001.

Before NELSON and MOORE, Circuit Judges; and KATZ,* District Judge.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant Marcellette Reynolds, as the personal representative of the estate of her son, Stephen Neal, appeals the denial of her motion for a new trial. In 1994, Neal, a former inmate at a Michigan correctional center, brought a civil rights action pursuant to 42 U.S.C. § 1983 against a correctional officer at the center, Defendant–Appellee Harry Green, alleging that Green filed false misconduct charges against Neal in retaliation for Reynolds's exercise of her First Amendment right to petition the government on behalf of Neal. The case was tried before a jury in the United States District Court for the Eastern District of Michigan in 1998, a judgment was entered for Green, and we re-

versed and remanded for a new trial on the basis of plain error in the jury verdict form. On remand, the case was tried again before a jury in 1999, with a magistrate judge presiding by consent of the parties, and a judgment was entered for Green. Reynolds moved for a new trial, arguing that the jury's answer of "no" to the first question on the verdict form was against the great weight of the evidence. The magistrate judge denied the motion for a new trial. For the following reasons, we REVERSE the magistrate judge's denial of Reynolds's motion for a new trial.

## I. BACKGROUND

We described the facts leading up to Reynolds's first appeal in *Reynolds v. Green*, 184 F.3d 589, 591–93 (6th Cir.1999). In brief, Neal was an inmate at the Detroit Woodward Corrections Center, a correctional facility in which inmates are entitled to certain privileges not given inmates at regular state prisons. On Sunday, January 31, 1993, Neal had planned and received permission for a social visit with his mother, but, on attempting to sign out, Neal and Green, the correctional officer on duty at the time, became involved in a dispute. When Green refused to let Neal leave the Center, Neal's mother, Reynolds, asked for Green's name and badge number in order to report Green to his superiors. The next day, Green issued two major misconduct charges against Neal, one for threatening behavior and the other for incitement to riot. On the sole basis of these charges, Neal was transferred to the Western Wayne Correctional Facility—a regular state prison—where he was incarcerated for approximately one year. At a subsequent hearing on the misconduct charges, Neal was found not guilty of both

---

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

of the major misconduct charges, but he was found guilty of a minor misconduct charge for excessive noise.

In March of 1994, Neal filed a claim against Green under 42 U.S.C. § 1983 in the United State District Court for the Eastern District of Michigan, alleging violations of his Fourteenth Amendment substantive due process right not to be intentionally subjected to false misconduct charges and his Eighth Amendment right not to be cruelly and unusually punished. Before the case came to trial, Neal died while out on parole; his mother, Reynolds, was substituted as the personal representative of his estate. The case was tried in front of a jury in January of 1998 and a verdict was entered for Green, but we reversed and remanded for a new trial on the basis of plain error in the jury verdict form.

In 1999, the case was again tried in front of a jury, with a magistrate judge presiding by consent of the parties. At the second trial, Reynolds argued that Green's filing of the misconduct charges was in retaliation for Reynolds's exercise of her First Amendment right to petition the government on Neal's behalf. The magistrate judge instructed the jury that to be successful in her claim, Reynolds had to prove four elements by a preponderance of the evidence; the magistrate judge simultaneously instructed the jury that Reynolds had already met the burden of proving the first two elements as a matter of law:

FIRST   That Defendant Green acted under the color of law. You are instructed as a matter of law that defendant was acting under the color of law.

SECOND   That Mrs. Reynolds was exercising a First Amendment Right to petition the government on Mr. Neal's behalf, which constituted protected conduct, when she informed Defendant Green that she was going to report him to his supervisors in Lansing. You are instructed as a matter of law, that Mrs. Reynolds was engaged in protected conduct.

THIRD   That Defendant Green wrote false misconduct charges against Plaintiff Neal because of Mrs. Reynolds [sic] statements on behalf of Mr. Neal.

FOURTH   That Defendant Green's action was a proximate cause of the injuries to Plaintiff Neal.

Joint Appendix ("J.A.") at 58 (Written Jury Instruction No. 14); see also J.A. at 416 (Oral Jury Instructions). In addition, the magistrate judge read to the jury certain facts to which the parties had stipulated, including that Neal was transferred solely on the basis of the two major misconduct charges and that Neal was found not guilty of the two major misconduct charges in the subsequent hearing, though he was found guilty of a minor misconduct charge for excessive noise. J.A. at 406–407.

The magistrate judge then presented the jury with a verdict form, consisting of five questions:

1. Did Defendant Green take an adverse action against the Plaintiff that would deter a person of ordinary firmness from continuing to engage in protected conduct—exercising a First Amendment right to petition the government?

2. Was the adverse action motivated at least in part by Mrs. Reynold's [sic] protected conduct?

3. Did Defendant Green show that he would have taken the same action against Neal in the absence of the protected conduct?

4. Was Defendant Green's action a proximate cause of injury or damage to plaintiff?

5. What amount of damages will compensate Plaintiff for the injuries caused by Defendant Green?

J.A. at 37–38 (Jury Verdict Form).

After the verdict form had been given to the jury, the jury submitted two questions to the magistrate judge, only the second of which is relevant. The second question stated: "Relative to 'Verdict Form' Question 1. Would protected conduct, *under the first amendment,* include protected conduct i.e. deprivation of any rights, privileges, or immunities secured or protected by the constitution. Or, is it limited to the first amendment right to petition the government?" J.A. at 55 (Jury Question) (emphasis in original). In response, the magistrate judge told the jury to review the instructions and the verdict form.[1] J.A. at 430 (Oral Jury Instructions).

Counsel for Reynolds objected to neither the jury instructions nor the verdict form before the jury began deliberation. On December 7, 1999, the jury returned a verdict for Green by answering "no" to the first question on the verdict form. J.A. at 431–32 (Trial Tr.). Reynolds immediately moved for a new trial, alleging that "the jury verdict is clearly against the weight of the evidence." J.A. at 41 (Pl.'s Mot. for New Trial). The magistrate judge denied the motion, finding that "the verdict of the jury was adequately supported by the evidence and was not unreasonable." J.A. at 59 (Order Den. Pl.'s Mot. for New Trial). Reynolds then moved for clarification of the order denying the motion for a new trial, which the magistrate judge also denied. Reynolds filed a timely notice of appeal.[2]

## II. ANALYSIS

### A. Standard of Review

The standard of review for the denial of a motion for a new trial under Federal Rule of Civil Procedure 59 is abuse of discretion. *Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 820 (6th Cir. 2000). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Wayne v. Village of Sebring,* 36 F.3d 517, 525 (6th Cir.1994), *cert. denied,* 514 U.S. 1127, 115 S.Ct. 2000, 131 L.Ed.2d 1001 (1995).

### B. Denial of Motion for New Trial

Reynolds moved for a new trial on the ground that the jury's answer of "no" to the first question on the verdict form was "against the clear weight of the evidence, the stipulations in this case, and the instruction by this Court. Further, a mis-

---

**1.** The court also told the jury to review one instruction in particular. J.A. at 430 (Oral Jury Instructions). There is some dispute as to which instruction this was. In the transcript of the oral jury instructions, the magistrate judge is recorded as referring to Number 14, J.A. at 430, but Reynolds contends that the transcript is in error and that the judge actually referred to Number 13. Appellant's Br. at 13 n. 2. Number 14 sets out the elements Reynolds had to prove (as quoted above). Number 13 reads in pertinent part:

There is a First Amendment Constitutional Right to complain to the government about misbehavior by government employees.
The writing by prison staff of false misconduct charges to retaliate against a prisoner for his mother complaining to government officials about that staff conduct would constitute a violation of the Constitution. In the consideration of whether the Constitution has been violated, you are to consider that the writing of false non-bondable misconduct charges would result in an inmate automatically being returned from a Corrections Center to a prison.
J.A. at 57 (Written Jury Instruction No. 13).

**2.** In her notice of appeal, Reynolds states that she is appealing both the judgment and the order denying her motion for a new trial. J.A. at 67 (Not. of Appeal). However, in her brief, Reynolds only addresses the denial of her motion for a new trial. Appellant's Br. at 17. We limit our review to that issue.

carriage of justice would result if this verdict is allowed to stand based upon the evidence presented in this matter." J.A. at 46–47 (Pl.'s Br. in Support of Mot. for New Trial). Pursuant to Federal Rule of Civil Procedure 59(a), a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). "Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous' result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir.), *cert. denied*, 519 U.S. 935, 117 S.Ct. 312, 136 L.Ed.2d 228 (1996). We have noted that "when a district court determines that a verdict is against the weight of the evidence, that court has a duty to grant a new trial in order to prevent a miscarriage of justice." *Id.* at 1047. However, "new trials are not to be granted on the grounds that the verdict was against the weight of the evidence 'unless that verdict was unreasonable.'" *Barnes*, 201 F.3d at 820 (quoting *Holmes*, 78 F.3d at 1047).

In denying Reynolds's motion for a new trial, the magistrate judge found that "the verdict of the jury was adequately supported by the evidence and was not unreasonable." J.A. at 59 (Order Den. Mot. for New Trial). We disagree. In answering "no" to the first question on the verdict form, the jury found that Green did not take an adverse action against Neal that would deter a person of ordinary firmness from continuing to exercise his or her First Amendment right to petition the government. In light of our precedent and

the parties' stipulations of fact in this case, this finding was unreasonable.

In *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc), we delineated the three elements of retaliation claims: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." In this case, the magistrate judge instructed the jury that Reynolds had met the burden of proving the first *Thaddeus–X* element as a matter of law. The first question on the jury verdict form relates to the second *Thaddeus–X* element, and the second, third, and fourth questions on the form relate to the third *Thaddeus–X* element. The issue, then, is whether a reasonable jury could have found that Reynolds did not meet the burden of proving the second *Thaddeus–X* element. We conclude that no reasonable jury could have found that she did not.

To answer "no" to the first question on the verdict form, a reasonable jury would either have had to find that Green did not take an action against Neal or that such action was not adverse—that it would not deter a person of ordinary firmness from petitioning the government. The parties stipulated that Green's misconduct report was the sole reason Neal was transferred from a correctional facility to a regular state prison. It is therefore clear that Green took an action against Neal; no reasonable jury could find otherwise.

In arguing that any action he took was not adverse, Green claims that "the jurors were not required to accept that the Plaintiff was a person of ordinary firmness." Appellee's Br. at 13. However, in *Thad-*

*deus–X,* 175 F.3d at 398, we noted that the standard for "adverse action"—an action that would deter a person of ordinary firmness from continuing to engage in constitutionally protected conduct—is an objective one. It is therefore irrelevant whether Reynolds or Neal would themselves have been deterred from petitioning the government by Green's conduct. In *Thaddeus–X,* we also noted that "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions...." *Thaddeus–X,* 175 F.3d at 398. We have held that the public release of details about a plaintiff's rape, *Bloch v. Ribar,* 156 F.3d 673, 681 (6th Cir.1998), the "[h]arrassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates" of a prisoner, *Thaddeus–X,* 175 F.3d at 398, and a plaintiff's removal from a tow-call list, *Lucas v. Monroe County,* 203 F.3d 964, 974 (6th Cir.2000), all constituted adverse actions that would deter a person of ordinary firmness from engaging in constitutionally protected conduct. Finally, we have even concluded that "[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse." *Thaddeus–X,* 175 F.3d at 396. Under our case law, it is clear that if Green's reports caused Neal to be transferred from a correctional facility, where Neal could come and go with permission, to a regular state prison, where he could not, then Green took an adverse action against Neal.

The parties stipulated that Green took an action against Neal, and, under our case law, the action taken was clearly adverse. Given that the only reasonable answer to the first question on the jury verdict form was "yes," the jury should not have been asked the question at all; as is evidenced by their second question to the magistrate judge, the members of the jury were confused by the first question on the jury verdict form. Based on the stipulated facts and our case law, we conclude that jury's answer of "no" to the first question on the jury verdict form was unreasonable, and we therefore further conclude that the magistrate judge abused his discretion in denying Reynolds's motion for a new trial.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's order denying Reynolds's motion for a new trial, and we REMAND for further proceedings consistent with this opinion.