*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FLORENCE BELL and EARNEST BELL, SR., as
personal representatives for EARNEST BELL, JR.,
deceased,

<em>Plaintiffs-Appellees,</em>

<em>v.</em>

ROBERT JOHNSON et al.,

<em>Defendants,</em>

ALLEN BLATTER,

<em>Defendant-Appellant.</em>

No. 03-2634

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 94-72086—Avern Cohn, District Judge.

Argued: January 25, 2005

Decided and Filed: April 20, 2005

Before: MOORE and GILMAN, Circuit Judges, GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Paul D. Reingold, MICHIGAN CLINICAL LAW PROGRAM, Ann Arbor, Michigan, for Appellees. John L. Thurber, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. **ON BRIEF:** Paul D. Reingold, MICHIGAN CLINICAL LAW PROGRAM, Ann Arbor, Michigan, for Appellees. John L. Thurber, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. This First Amendment retaliation claim relates to a series of events that we have addressed in three prior published decisions. Two of those decisions came in a related case, *Thaddeus-X v. Blatter*, 110 F.3d 1233 (6th Cir. 1997), *vacated on*

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

*grant of rehearing en banc and aff'd in part by en banc court*, *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc), and one in a prior appeal in this case, *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) ("*Bell I*"). Following our order of remand in *Bell I*, the First Amendment retaliation claim went to trial, and the jury returned a verdict in favor of Plaintiff-Appellee Earnest Bell, Jr. ("Bell")[1] and against Defendant-Appellant Allen Blatter ("Blatter"), awarding $1,500 in compensatory damages but no punitive damages. The district judge granted a new trial on the issue of damages and declined to recuse himself after allegedly making several challenged comments at an off-the-record status conference. This new trial resulted in a verdict of $6,000 in compensatory damages and $28,000 in punitive damages against Blatter. The two issues presented in this appeal are (1) whether the district judge abused his discretion in granting the new trial on damages; and (2) whether the district judge abused his discretion in declining to recuse himself from the case. We **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In *Bell I*, we summarized much of the factual background to this case as follows:[2]

> Bell is a former prisoner at the State Prison for Southern Michigan in Jackson. In 1993-94, Bell was serving a sentence for armed robbery. He was assigned to administrative segregation during his stay at Jackson because he was diagnosed with AIDS and had engaged in consensual sex with another inmate. Bell was paroled in 1994. Bell returned to Jackson later that year after he violated his parole by failing a drug test. When he returned to prison, Bell was once again assigned to administrative segregation based upon his prior sexual misconduct.
>
> In administrative segregation, prisoners are housed alone in cells with steel doors. Prisoners in segregation are locked in their cells for twenty-three hours each day, but are allowed to spend one hour in the prison yard, where the inmates are placed in cages to isolate them. Because prisoners in segregation are not allowed to congregate, the prisoners communicate with each other by yelling through cracks under the cell doors, passing notes through guards, or sliding notes between cells using paper and string.
>
> In April 1994, Bell sought legal assistance in pursuing a variety of civil rights claims from a jailhouse lawyer named Thaddeus-X who was housed in a nearby cell. On April 20, 1994, Bell and Thaddeus-X signed a legal assistance agreement, which was approved by a deputy warden. With Thaddeus-X's assistance, Bell filed a lawsuit against seventeen prison guards and administrators, including Sgt. [Allen] Blatter and Officer Mark Stimpson. Bell's suit alleged a number of claims, including a challenge to his placement in administrative segregation. Before the lawsuit was filed, prison guards assisted Bell by providing him with writing materials and by passing papers and legal materials between Bell and Thaddeus-X.
>
> Bell claims that the guards began treating him differently after the lawsuit was filed. The guards began refusing to provide Bell with writing supplies or to pass legal materials between Bell and Thaddeus-X. According to Bell, and fellow inmate Eric Waddell, Bell's lawsuit was common knowledge among the guards because Thaddeus-X frequently boasted about the suit, and because the prisoners on the floor had discussed the suit by shouting from cell to cell. In response to what he perceived

---

[1] Plaintiff Earnest Bell, Jr. ("Bell") died on April 28, 2004, shortly after his appellate proof brief was filed. Plaintiffs Florence Bell and Earnest Bell, Sr., Bell's parents, are now pursuing this case on Bell's behalf.

[2] Because, in *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) ("*Bell I*"), we were reviewing a district court's prior grant of judgment as a matter of law to the defendants, this summary drew all inferences in Bell's favor. *See id.* at 601.

to be undue harassment by several of the prison guards, Bell sent a "Notice of Litigation" to the seventeen named defendants in his lawsuit on June 3, 1994. The notice explained that Bell had filed a federal lawsuit against the named defendants and warned that "[a]ny further harassment or retaliation will be reported immediately to [the district judge] by plaintiff."

On June 6, 1994, Sgt. Blatter conducted a search of Bell's cell while Bell was in the prison yard for his daily hour of "yard time." When Bell returned to his cell, he found the cell in disarray, and he noticed that some of his legal papers and his medical diet snacks had been taken. Waddell, whose cell was directly across the hall from Bell's, saw Blatter enter the cell and leave with papers and Bell's snacks. Bell testified that he was allowed to keep the medical snacks in his cell because he had AIDS and he needed extra food to slow his weight loss. At trial, Blatter admitted to conducting the cell search and to removing Bell's medical snacks, although he denied taking any legal papers. Blatter also acknowledged that the food was given to Bell for medical reasons.

Bell filed two grievances concerning the June 6 search of his cell. On June 7, 1994, Bell spoke with Sgt. Blatter and asked him about the legal materials. According to Bell, Blatter responded by telling Bell that "if [he] knew what was good for him, that [he] better write the courts [and] have the litigation dismissed." On June 8, the prison staff moved Thaddeus-X from the second floor to the base level of administrative segregation, making it very difficult for Bell to communicate with him about the lawsuit. That day, Bell filed an amended complaint describing the retaliatory cell search on June 6.

On June 15, 1994, notice of Bell's lawsuit was officially received by the prison litigation coordinator on behalf of defendants Blatter and Stimpson. On June 20, 1994, Officer Stimpson allegedly came to Bell's cell and told Bell that he "was going to pay" for filing the lawsuit. While Bell was in the prison yard on June 20, Sgt. Blatter and Officer Stimpson again searched Bell's cell. Bell returned to find that more of his legal materials were missing. Waddell observed this search from his cell and saw Blatter and Stimpson confiscate Bell's food and legal papers. Bell filed another grievance four days later seeking the return of his property.

Michigan Department of Corrections ("MDOC") policy regulates shakedowns of prisoners' cells. MDOC Policy Directive 04.04.110 provides that "no search shall be conducted for the purpose of harassing or humiliating a prisoner." The policy further instructs prison staff to "use reasonable care in conducting the search to protect and safeguard the prisoner's property and . . . attempt to leave searched areas in a similar condition to what they were prior to the search." Prison staff are also directed to enter the cell search into the cell-search log and to complete a contraband-removal record and a notice of intent to conduct an administrative hearing whenever non-dangerous contraband is removed from a prisoner's cell. No entry was made in the cell-search log, nor was any notice of intent filed, in connection with either the June 6 or the June 20 search of Bell's cell.

Bell stated that his legal materials were never returned to him. He eventually was able to obtain copies from his sister, who had kept duplicates of some of his filings. Bell testified that he became angry and afraid as a result of the actions of prison officials regarding his lawsuit. He explained: "I was angry. It got to the point where I was kind of skeptical from going to the yard. I had started being afraid because my medical snacks, they could have started to, doing anything to my food . . . ."

*Bell I*, 208 F.3d at 597-98 (citations and footnote omitted, alterations in *Bell I*). A magistrate judge recommended that Bell's other claims be dismissed, but that his First Amendment retaliation claim (relating to the June 6, 1994 and June 20, 1994 searches) be allowed to go forward, and the district

judge adopted this recommendation. The case was held pending our decision in a related case, *Thaddeus-X*, 175 F.3d 378, involving a separate claim by Bell and "his jailhouse lawyer, Thaddeus-X." *Bell I*, 208 F.3d at 600. Following our en banc decision in *Thaddeus-X*, Bell's First Amendment retaliation claim went to jury trial ("Trial No. 1") from January 17 to January 18, 2001. At the close of Bell's case, the defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), and the district judge granted that motion. We reversed the district court's decision to enter judgment as a matter of law and remanded the case for further proceedings. The chief district judge then ordered the case reassigned, for reasons of docket efficiency, to another district judge. The case was then retried before another jury ("Trial No. 2") from February 18 to February 19, 2003. The jury did not find Stimpson to be liable, but found Blatter to be liable for $1,500 in compensatory damages, but no punitive damages. The district judge entered judgment on February 26, 2003, and the next day Bell timely filed a motion for new trial on the issue of damages. On August 25, 2003, the district judge granted the motion, finding as follows:

> The damage award of $1500.00 in compensatory damages with no award for punitive damages was against the great weight of the evidence at trial considering the egregiousness of Blatter's conduct and the effect such conduct had on Bell. Blatter should have been punished for his conduct. Clearly, the jury found that Blatter not only retaliated against Bell for filing a lawsuit, but also that he tried to cover up his misconduct by telling falsehoods. The jury's award of only $1500.00 in compensatory damages as a consequence is seriously flawed. *See Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). Bell is therefore entitled to present his case for damages to a second jury. The verdict is simply not one which a jury, given the evidence detailed above and applying the instructions on the law set forth above, could reasonably have reached. The evidence shows that Blatter's conduct was wanton and oppressive and is such that the "jury awarded damages in an amount substantially less than unquestion[ably] proved by the . . . uncontradicted and undisputed evidence." *Walker v. Bain*, 257 F.3d 660, 67[4] (6th Cir. 2000).

Joint Appendix ("J.A.") at 103-104 (Memorandum and Order Granting Plaintiff's Motion for a New Trial on Damages ("Order Granting New Trial")) (omission in Order Granting New Trial).

On September 23, 2003, a status conference took place, off the record, in the district judge's chambers. At this conference, the district judge made several comments that led defendants to request that the district judge recuse himself from the case. According to Blatter,

> [d]uring the course of the status conference, the trial court informed Blatter's counsel, John L. Thurber, that he should inform his supervisor that the Court would try the instant case as many times as necessary until a jury reached a verdict of at least $9,000.00. The Court also handed counsel for both sides a note left over from the jury's deliberations which contained several numbers on it which presumably showed several possible verdicts. Finally, the Court informed Mr. Thurber that it would award Bell's counsel, Paul Reingold, all of his fees for a previous appeal because the Court had spoken with Lynn Branham, the Dean of Cooley Law School in Grand Rapids, and she indicated that authority existed which would allow appellate fees to be awarded outside of the 150% cap contained in the Prison Litigation Reform Act . . . .

J.A. at 109 (Brief in Support of Recusal) (citations omitted). In his order denying the recusal motion, the district judge provided some clarification and adopted a portion of Bell's description of the "context" of the comments, but did not explicitly repudiate any of the statements attributed to

him by Blatter's attorneys.[3] J.A. at 148-49 (Order Denying Recusal Motion). The district judge also noted that "[t]he undersigned's comments at the status conference were not intended to be taken literally, as Bell's counsel recognizes, but rather were an attempt, perhaps a bit heavy-handed, to resolve the case short of a third trial. Rhetorical promiscuity is not the same as bias." J.A. at 150 (Order Denying Recusal Motion). The case again went to jury trial ("Trial No. 3"), and this trial resulted in a verdict of $6,000 in compensatory damages and $28,000 in punitive damages against Blatter, who then filed this appeal.

## II. ANALYSIS

### A. Jurisdiction

As Bell sued under 42 U.S.C. § 1983, the district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

### B. Motion for New Trial

Federal Rule of Civil Procedure 59(a) provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a). The Supreme Court has noted that "the authority of trial judges to grant new trials" pursuant to Rule 59(a) "is large." *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996); *see also id.* ("'The trial judge in the federal system,' we have reaffirmed, 'has . . . discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.'" (quoting *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958))).

We review a decision granting a motion for a new trial for abuse of discretion. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir.), *cert. denied*, 519 U.S. 935 (1996).[4] Under this standard, we will reverse a decision granting a new trial when we have a "definite and firm conviction . . . that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* at 1045 (quotation omitted). As we have previously noted,

> [t]he scope of review of a damage award is extremely narrow. A trial court may not grant a new trial on the ground of insufficient damages unless the jury verdict is one that could not reasonably have been reached. The remedy of a new trial for inadequate damages is appropriate only where the evidence indicates that the jury awarded damages in an amount substantially less than unquestionably proved by the

---

[3]However, the district judge did issue an order stating the following:
Contrary to Blatter's argument, the undersigned did not indicate that this case was worth $9000.00 and no other verdict would be accepted. Rather, the undersigned indicated, as it had in the order granting a new trial, that this amount appeared reasonable to resolve both Bell's claim for damages and the attorney fees likely to be awarded, including fees incurred on appeal, if Bell was successful at trial. At all times, however, counsel and the undersigned understood that this was a matter for the parties to decide. Indeed, when it became clear that settlement was not likely, the undersigned set the case for trial.
Joint Appendix ("J.A.") at 151 (Order Denying Recusal Motion).

[4]In *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415 (1996), the Supreme Court confirmed that abuse of discretion is the appropriate standard for review of a federal district court's *denial* of a motion for a new trial. *Id.* at 434-36. Nothing in *Gasperini* requires us to alter our prior practice of applying this standard to review of a district court's *grant* of a motion for a new trial as well. *See, e.g.*, *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 542 (6th Cir.), *cert. denied*, 510 U.S. 914 (1993).

plaintiff's uncontradicted and undisputed evidence.  Thus, if the verdict is supported by some competent, credible evidence, a trial court will be deemed not to have abused its discretion in denying the motion.

*Walker v. Bain*, 257 F.3d 660, 674 (6th Cir. 2001) (citations omitted), *cert. denied*, 535 U.S. 1095 (2002).

Here, Blatter has conceded, among other things, that Bell's initial lawsuit constituted protected First Amendment conduct; that Blatter entered, searched, and "removed food" from Bell's cell while Bell was in the yard on June 6, 2004, but did not list this search into the jail's Administrative Segregation Second Floor Log Book ("Log Book"); and that Blatter (together with Stimpson) entered and searched Bell's cell while Bell was out in the yard on June 20, 2004, but did not enter this search into the Log Book.  J.A. at 531 (Stipulation of Facts).  In addition, according to its verdict form, the jury found that:  (1) Blatter took "an adverse action against the Plaintiff that would deter a person of ordinary firmness from continuing to exercise his rights under the First Amendment"; (2) Blatter's "adverse action [was] motivated at least in part by Plaintiff Bell's protected conduct"; (3) Blatter failed to "show that he would have taken the same action in the absence of the protected activity"; (4) Blatter's "conduct [was] the proximate cause of injuries to Plaintiff Bell"; (5) $1,500 was the appropriate "amount of damages [to] compensate the Plaintiff for the injuries he received as a consequence of Defendant Blatter's actions"; and (6) Blatter did *not* "act wantonly or oppressively, as defined on pages 24 and 25 of these instructions, to violate the Plaintiff's right not to be retaliated against," and Bell was accordingly not entitled to punitive damages.  J.A. at 58-59 (Verdict Form for Allen Blatter - Retaliation).[5]

Given these findings, the district judge did not abuse his discretion in granting a new trial.  Considering the evidence presented at trial, the jury's answers to questions one through four of the verdict form were in conflict with its answer to question six.  It is uncontradicted that Blatter was in a position of substantial authority and power over Bell.  In fact, there are few other situations where a person exercises such complete authority and power over another human as that exercised by a prison officer over those individuals detained in administrative segregation in the State of Michigan.  *See Bell I*, 308 F.3d at 597.  The definition of acting "oppressively" submitted to the jury provides that an action is "oppressive[]" when it violates another person's rights "with unnecessary harshness or severity," and that action "by misuse or abuse of authority [or] power" qualifies as action undertaken "with unnecessary harshness or severity."  J.A. at 103 (Order Granting New Trial).  The testimony presented to the jury, together with Blatter's stipulation of facts, indicates that both the June 6, 1994 search of Bell's cell and the June 20, 1994 search of Bell's cell took place while Bell was in the prison yard and did not have access to the cell, and were possible only because of Blatter's official position and authority.  As these searches depended entirely on Blatter's authority and power over Bell, the jury's finding that Blatter did retaliate against Bell requires, according to the instructions given to the jury, an additional finding that Blatter acted "oppressively."  J.A. at 102-03 (Order Granting New Trial) (quoting jury instructions).[6]

---

[5]The definitions of "wantonly" and "oppressively" referenced in the verdict form provided:
> An act or a failure to act is "wantonly" done, if done in reckless or callous disregard to, or indifference to, the rights of one or more persons, including the injured person.
> An act or failure to act is "oppressively" done, if done in a way or manner which injuries [sic], or damages, or otherwise violate [sic] the rights of another person with unnecessary harshness or severity, *as by misuse or abuse of authority [or] power*, or by taking advantage of some weakness, or disability, or misfortune of another person.

J.A. at 102-03 (Order Granting New Trial) (quoting jury instructions) (emphasis added).

[6]Additionally, there is also some reason to believe that the uncontradicted evidence supported a finding that Blatter acted "wantonly."  Blatter's undisputed testimony at trial indicates that he knew that any retaliation against a prisoner for filing grievances (and, by logical extension, for filing lawsuits) would be improper.  J.A. at 356 (Blatter

The uncontradicted and undisputed evidence indicates that Blatter acted oppressively in retaliating against Bell's exercise of his First Amendment rights. We must uphold the district court's decision unless we have "a definite and firm conviction" that the district court "committed a clear error of judgment in the conclusion it reached." *Holmes*, 78 F.3d at 1045 (internal quotations omitted). As the facts of this case do not justify such a firm conviction, we must affirm the district judge's decision to order a new trial on damages.

## C. Motion for Recusal

We review a lower court's denial of a recusal motion for abuse of discretion. *Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003). The main federal recusal statute[7] provides in relevant part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which *his impartiality might reasonably be questioned*.

(b) He shall also disqualify himself in the following circumstances:
    (1) Where he *has a personal bias or prejudice* concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455(a)-(b) (emphases added). In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court explained that consideration of the "extrajudicial source factor" is necessary when making determinations under both § 455(a) and § 455(b)(1). Contrary to the suggestion of prior caselaw, *see, e.g.*, *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989), the Supreme Court clarified that an extrajudicial source for a judge's opinion about a case or a party is neither necessary nor sufficient to require recusal. *Liteky,* 510 U.S. at 554-56. Instead, the presence of an extrajudicial source is merely a thumb on the scale in favor of finding either an appearance of partiality under § 455(a) or bias or prejudice under § 455(b)(1). *See Liteky,* 510 U.S. at 554-56.

Even accepting Blatter's account of the off-the-record status conference, it is apparent that the district judge did not abuse his discretion in declining to recuse himself pursuant to § 455.[8] First, a statement by the district judge that he would continue to retry the case until Bell received a total verdict of at least $9,000 was not improper as long as the district judge believed that a verdict of less than $9,000 would be against the clear weight of the evidence, requiring him to grant a motion for

---

Test.). This is arguably sufficient to require a finding that Blatter "wantonly" retaliated against Bell because, at the very least, Blatter's knowledge that his action was wrongful indicates that the action was done with "indifference" to Bell's rights. J.A. at 102 (Order Granting New Trial) (quoting jury instructions).

[7] Blatter cites two federal statutes as the basis of his motion for recusal, 28 U.S.C. § 144 and 28 U.S.C. § 455. However, the Supreme Court has explained that subsection (b)(1) of § 455 "entirely duplicate[s] the grounds of recusal set forth in § 144 ('bias or prejudice'), but (1) ma[kes] them applicable to *all* justices, judges, and magistrates (and not just district judges), and (2) place[s] the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit." *Liteky v. United States*, 510 U.S. 540, 548 (1994). Accordingly, it is not necessary for us separately to address § 144.

[8] Blatter argues strenuously that the district judge should have accepted the affidavits submitted with Blatter's recusal motion as true and immediately recused himself. However, the affidavits — which merely state that the district judge told counsel the case would be retried again if the verdict were less than $9,000, that the district judge told counsel he planned to award the maximum attorney fees possible if Bell prevailed in a new trial, and that the district judge showed counsel a piece of paper found in the jury room — are legally insufficient to require recusal. These allegations, even if true, do not demonstrate either an appearance of partiality, 28 U.S.C. § 455(a), or actual bias or prejudice, 28 U.S.C. § 455(b)(1). *See Liteky*, 510 U.S. at 555. Moreover, we do not require that the case be transferred to another judge to determine the legal sufficiency of the affidavits. *See, e.g.*, *City of Cleveland v. Krupansky*, 619 F.2d 576, 578 (6th Cir.) (per curiam), *cert. denied*, 449 U.S. 834 (1980).

a new trial pursuant to Rule 59(a).[9] As the jury had already made a liability determination, the statement could not indicate that the judge was biased (or create an appearance of bias) in favor of one party winning the liability phase — the jury had already determined that Bell had prevailed in that phase. In fact, given the post-verdict certainty of Blatter's liability, the time already consumed in litigation, the importance of the constitutional rights at stake, and (now, with the benefit of hindsight) the $34,000 verdict actually reached by the jury in Trial No. 3, $9,000 seems to be a minimum damages figure relatively favorable to Blatter. Accordingly, such a comment by the district judge would show neither bias nor an appearance of partiality.

Second, the district judge's decision to discuss (or share with counsel) the piece of paper found in the jury room does not demonstrate bias, prejudice, or the appearance of partiality.[10] It was simply an effort by the district judge to facilitate a settlement potentially advantageous to both parties by providing them with more complete information about the potential outcome of a new trial. There is no allegation that the district judge disclosed this information only to a single party, or that he made the disclosure to one party before sharing it with the other. Moreover, it seems clear that the piece of paper found in the jury room qualifies as a "fact[] introduced or event[] occurring in the course of the current proceedings," *Liteky*, 510 U.S. at 555, and accordingly cannot serve as an extrajudicial factor weighing in favor of recusal.

Third, the district judge's statement that he was inclined to award attorney fees (and that those fees might exceed those normally allowed by the Prison Litigation Reform Act) showed neither bias nor the appearance of partiality. The district judge was simply providing the parties with additional information that might affect their decisions as to whether it would be appropriate to settle the case. At most, this statement demonstrated that the district judge thought that Bell had presented a meritorious case at trial. An opinion of the merits of the case, resulting from a judge's experience with the case in the course of his or her official duties, is not sufficient to justify § 455 recusal unless it demonstrates a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555. Such is manifestly not the case here, where the district judge both had substantial experience with the case and expressed an opinion clearly justified by the evidence presented at trial.[11]

We must uphold the district court's recusal decision unless we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Youn*, 324 F.3d at 422 (internal quotation omitted). Although we do not condone the statements attributed to the district judge during the September 23, 2003 status conference, which the judge himself conceded were "a bit heavy-handed," we do not have a firm conviction that the statements made in the context of encouraging a settlement constituted a clear error of judgment. We therefore affirm the district judge's decision not to recuse himself from this case.

---

[9]We express no opinion as to whether the district judge could have granted *successive* new-trial motions following repeated jury verdicts of less than $9,000, or whether he could have granted a new-trial motion after a verdict only slightly below $9,000. We hold simply that, on the facts currently presented, a mere effort to inform the parties of the minimum damages that would have survived a new-trial motion, based on the evidence presented in Trial No. 2, did not require recusal.

[10]As no party asserts that the district judge's action was actually improper, we express no opinion on the general propriety of disclosing jury-room notes to counsel.

[11]The parties devote substantial space to *Anderson v. Sheppard*, 856 F.2d 741 (6th Cir. 1988), an earlier recusal case. However, as the extreme and extensive comments in *Anderson* were wholly different from those involved here, *Anderson* does not require reversal in the present case.

### III.  CONCLUSION

As the district judge did not abuse his discretion, either in granting the new trial or in declining to recuse himself from the case, we **AFFIRM** the judgment of the district court.