**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0812n.06
Filed: November 6, 2006

**Nos. 05-3293/05-4160**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARTIN T. WILLIAMS, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: BOGGS, Chief Circuit Judge, and DAUGHTREY, Circuit Judge, and MILLS,[*] District Judge.

**PER CURIAM.** This case is before us on appeal by the government following a jury verdict finding the defendant, Martin T. Williams, guilty of all five counts of an indictment charging him and two co-defendants with conspiracy to commit mail fraud, wire fraud, and healthcare fraud and with committing wire fraud and healthcare fraud involving certain illegal billing practices. Williams filed a motion for a new trial, in which he alleged that the government had failed to provide him with certain information that could have been used to impeach prosecution witnesses. The district court eventually granted the motion on that ground, but did so only after the government had filed a timely notice of appeal from an

---

[*]The Hon. Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

earlier ruling on the same motion, thereby depriving the district court of continuing jurisdiction in the case. We conclude that both rulings by the district court must be reversed, one due to error and the other for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Following the return of the indictment in January 2002 against Williams, Dr. Lal Rohira, and Sharonne Szyrej, the district court granted a partial severance, ordering that Szyrej and Rohira be tried together, with Williams's trial "to follow." Szyrej eventually pleaded guilty to the crimes charged, thus avoiding trial altogether. Rohira then proceeded to trial alone and was found guilty by a jury of all charges in July 2003. Some five months later, in late December 2003, Williams went to trial and he, too, was found guilty of all charges listed in the indictment.

Williams filed timely post-trial motions for judgment of acquittal and for a new trial with the court. In the latter filing, he alleged that the prosecution had failed to disclose a letter sent by the government to two prosecution witnesses, a letter that Williams contends constituted a "secret agreement" not to prosecute the witnesses in exchange for their testimony against Rohira and Williams, despite the witnesses' own guilt in the fraudulent billing scheme. According to the defendant, such non-disclosure violated the mandates of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), Supreme Court decisions requiring the prosecution to provide criminal defendants

with evidence in the government's possession that could be considered exculpatory or that could serve to impeach the credibility of prosecution witnesses.

Over a year later, on February 4, 2005, the district court addressed not only Williams's motions for judgment of acquittal and for a new trial, but also Rohira's similar motions that had remained unresolved during the pendency of Williams's trial. In ruling upon those motions in separate decisions, however, the district judge focused upon an issue that had not been raised by either Williams or Rohira. In Williams's case, the district court noted:

> The prosecution called FBI Special Agent Graupmann to testify about the amount of financial loss caused by the defendant's alleged billing fraud; through a dubious method . . ., he estimated the loss at over $1 million. Under *Booker* and *Blakely*, that is a fact that must be admitted by the defendant or expressly found by the jury beyond a reasonable doubt before it may be used to help convict him or to increase his sentence.

*United States v. Williams*, 355 F. Supp. 2d 903, 908 (N.D. Ohio 2005) (footnote omitted), (citing *United States v. Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, 542 U.S. 296 (2004)). Because the defendant's "jury was never expressly charged with finding the amount of loss," the district judge "concluded that Williams is entitled to a new trial under *Booker* and *Blakely*." *Williams*, 355 F. Supp. 2d at 909-10. The court "also note[d] that the prosecution's alleged *Brady* violation might entitle Williams to a new trial as well," *id.* at 904, but, having already relied upon *Booker* and *Blakely* to grant relief to the defendant, ruled that "Williams's motion for a new trial on the ground of the prosecution's alleged

violation of *Brady v. Maryland* . . . and his motion for judgment of acquittal due to insufficient evidence . . . are denied without prejudice." *Id.* at 910.

On February 14, 2005, Rohira filed with the district court a timely motion for reconsideration. In that filing, Rohira asked, in the interest of judicial economy, for a ruling by the court on his unresolved request for judgment of acquittal and for a new trial on grounds that he had originally identified in his post-trial motion, including a *Brady* violation, prosecutorial misconduct, and ineffective assistance of counsel. Eight days later, on February 22, Williams filed his own motion for reconsideration, referencing "the reasons more fully elucidated" by Rohira.

Concluding that Williams's motion for reconsideration was untimely and, thus, was not an impediment to the district court's February 4 ruling becoming final, the United States filed an appeal to this court on March 3, 2005 (docketed here as No. 05-3293). On August 9, 2005, however, the district judge issued a decision addressing Williams's motion for reconsideration and specifying that the prosecution's failure to "turn over a letter which could readily be construed as a promise of nonprosecution in exchange for the testimony of two key government witnesses" did indeed result in a constitutional violation that entitled the defendant to a new trial. The district court also concluded, however, that Williams's motion for judgment of acquittal should be denied '[b]ecause the jury's guilty verdicts are supported by substantial and competent evidence." The government then filed a second

appeal to this court that challenged only the propriety of the August 9 ruling (docketed here as No. 05-4160). The two matters have now been consolidated for appeal.

## DISCUSSION

### Case Number 05-3293

The government's initial appeal challenges, on both a factual and a legal basis, the correctness of the district court's decision to grant Williams a new trial based upon a perceived violation of the mandates of *Blakely* and *Booker*. The district judge concluded that such an error occurred in the defendant's trial because the conclusions of FBI Agent Graupmann regarding the financial loss attributable to the defendant's criminal actions were neither admitted by Williams nor found by the jury beyond a reasonable doubt.

We review the grant of a motion for a new trial only for an abuse of discretion. *See, e.g.*, *Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir. 2005). "Under this standard, we will reverse a decision granting a new trial when we have a 'definite and firm conviction . . . that the court below committed a clear error of judgment . . . .'" *Id.* at 1003 (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir. 1996)).

Such a clear error has been committed in this litigation. Initially, as noted by the government in its appellate brief, the district court was mistaken in its identification of the factual underpinning of its decision. The district judge's grant of a new trial was fueled in

no small measure by the court's conclusion that Agent Graupmann's testimony concerning his estimate of the applicable monetary loss suffered by the victims of the fraud was "poorly supported," "unreliable but seemingly credible," "flawed," and "shocking." *Williams*, 355 F. Supp. 2d at 909. An examination of the testimony offered by Graupmann at *Williams's* trial, however, leads to the inescapable conclusion that the agent never testified regarding the total amount of the loss attributable to the criminal conspiracy. Graupmann also testified at *Rohira's* separate trial, and it is possible that the loss-estimate testimony to which the district judge referred was offered in that earlier proceeding; such testimony was, nevertheless, not placed before the defendant's jury.

Furthermore, the district court's initial ruling on the new trial motion was legally incorrect. Indeed, before this court, Williams himself concedes in his brief in case number 05-3293 "that the trial court erred in granting a new trial based upon an alleged *Booker* violation – an issue he never raised nor argued." The district judge's confusion in this regard is understandable, given the fact that the ruling on Williams's motion for new trial was filed only three weeks after the issuance of the Supreme Court's *Booker* decision, when the federal courts were still struggling to comprehend and implement the teachings from the Supreme Court's *Apprendi-Blakely-Booker* line of cases.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant entered a guilty plea to an offense that carried a possible prison term of five-to-ten years. At sentencing, however, the state trial court concluded that Apprendi's conduct could be considered a

racially-motivated "hate crime." Consequently, the state court imposed an enhanced 12-year sentence upon Apprendi for that offense. The Supreme Court invalidated the punishment, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

Four years later, the Court extended the *Apprendi*-based Sixth Amendment protections in the context of a state sentencing scheme in *Blakely v. Washington*. Although the crime to which Blakely pleaded guilty was punishable by a term of imprisonment that could, by statute, extend up to ten years, other provisions of applicable state law "mandated a 'standard' sentence of 49-to-53 months, unless the judge found aggravating facts justifying an exceptional sentence." *Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 298). When the trial court did, in fact, find that Blakely acted with "deliberate cruelty," it imposed a 90-month sentence, a punishment that the Supreme Court ultimately invalidated, reasoning "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303. Thus, without an admission by the defendant that he acted with "deliberate cruelty," or a similar jury finding based upon evidence satisfying the constitutional, beyond-a-reasonable-doubt standard, Blakely could not be sentenced to more than 53 months in prison.

Finally, on January 12, 2005, the Supreme Court logically extended the rationale of *Blakely* from the Washington state sentencing scheme to the United States Sentencing Guidelines. After recognizing that "there is no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in" *Blakely*, the Court reaffirmed its holding in *Apprendi* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 233, 244. A five-justice majority of the court then concluded that any Sixth Amendment violation resulting from the application of the guidelines could be cured by excising from the federal sentencing statutes any provision making the guidelines mandatory rather than advisory. *See id.* at 245.

*Booker* and its predecessors did not, however, outlaw all judicial fact-finding in sentencing. In fact, in *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006), we specifically noted that "[b]ecause the guidelines are now advisory and not mandatory, a District Court may rely on extra-verdict facts or on those other than which the defendant has specifically admitted when it calculates his sentence." *See also United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005), *cert. denied*, ___ S.Ct. ___, 2006 WL 1591782 (Oct. 2, 2006) (Judicial fact-finding is still appropriate after *Booker*. Now, however, district courts have "the option, after calculating the Guideline range, to sentence a defendant outside the resulting Guideline range.").

In Williams's case, no *Booker* error was committed because the district court never imposed sentence upon the defendant. Furthermore, the verdict rendered by the jury in this case in no way depended upon a precise determination of the amount of the loss suffered as a result of the criminal activities of the defendant. Pursuant to the provisions of 18 U.S.C. § 371, in fact, any conspiracy to defraud the United States, combined with commission of "any act to effect the object of the conspiracy," is punishable by up to five years in prison, a fine, or both, regardless of the amount of loss. The jury in this matter concluded beyond a reasonable doubt that Williams conspired with another individual to defraud the government, among other entities. Furthermore, by its verdict finding the defendant guilty of three counts of wire fraud, the jury also determined, again beyond a reasonable doubt, that Williams actually took the necessary steps to effectuate the underlying fraudulent acts. Contrary to the ruling of the district court, therefore, *Booker* and its mandates are not implicated in the jury's resolution of the issues presented to it. The district court thus erred in granting Williams's motion for a new trial on *Blakely* and *Booker* grounds.

**Case Number 05-4160**

Although defendant Williams concedes that the district judge erred in granting him a new trial on *Blakely* and *Booker* grounds, he nevertheless contends that we should affirm the district court's August 9, 2005, order granting a new trial based upon the withholding of impeachment evidence in violation of *Brady v. Maryland* and *Giglio v. United States*

should be affirmed.  But, because the district court had no jurisdiction to issue this second decision granting Williams a new trial on alternate grounds, the defendant is not now entitled to the relief he seeks.

At the conclusions of their separate jury trials, Rohira and Williams filed with the district court separate, timely motions for judgments of acquittal and for new trials.  Rohira's motion for a new trial, filed on September 30, 2003, argued that the requested relief was justified "because the government failed to disclose critical exculpatory and impeachment material to Dr. Rohira, . . . because of a pattern of prosecutorial misconduct . . ., and because of the ineffective assistance of Dr. Rohira's trial counsel."  Williams's motion for a new trial was filed on January 6, 2004, and contended only that exculpatory and impeachment evidence was not provided to him as required by *Brady* and *Giglio*.  As previously indicated, the district court considered the motions together, but issued separate decisions more than a year later, on February 4, 2005, granting new trials in light of the Supreme Court's then-recent *Blakely* and *Booker* decisions.  *See United States v. Rohira*, 355 F. Supp. 2d 894 (N.D. Ohio 2005); *Williams*, 355 F. Supp. 2d 903.  Additionally, the *Williams* decision suggested that "the prosecution's alleged *Brady* violation might entitle Williams to a new trial as well."  *Williams*, 355 F. Supp.2d at 904.  Nevertheless, the district judge concluded explicitly that "Williams's motion for a new trial on the ground of the prosecution's alleged violation of *Brady v. Maryland* [doc. no. 139] and his motion for judgment of acquittal due to insufficient evidence [doc. no. 138] are *denied without*

*prejudice*." *Id.* at 910 (emphasis added). Similar comments were included in the published decision in Rohira's case. *See Rohira*, 355 F. Supp. 2d at 895, 902.

Aware that the government planned to appeal the district court's decision that *Booker* mandated the grant of a new trial, defendant Rohira filed a motion for reconsideration of the district court's decision within ten days of the new trial ruling. In that motion for reconsideration, Rohira requested specifically that the district court address his motion for judgment of acquittal and the alternate grounds raised in his initial new trial motion. Williams filed a similar motion for reconsideration, seeking relief "for the reasons set forth in the attached Brief and in Defendant Lal Rohira's recent Motion by the same title." Williams's motion was not filed until February 22, however, 18 days after the issuance of the district court's first ruling. Because it considered Williams's motion for reconsideration untimely and, thus, ineffective in preventing the February 4 order from becoming final, the government filed its appeal of that district court decision to this court on March 3, 2005.

The United States now argues that its first notice of appeal in the Williams litigation deprived the district court of further jurisdiction over the matter such that the subsequent district court order filed on August 9, 2005, was a nullity. It is indeed "settled law that filing a notice of appeal with the district court divests the district court of jurisdiction to act in a case, except on remedial matters unrelated to the merits of the appeal." *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 71 F.3d 1197, 1203 (6th Cir. 1995).

Thus, "expansion of a district court's judgment [is] not permitted while an appeal is pending." *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987). This general rule applies "unless that appeal is untimely, is an appeal from a non-appealable non-final order, or raises only issues that were previously ruled upon in that case by the appellate court." *Rucker v. United States Dep't of Labor*, 798 F.2d 891, 892 (6th Cir. 1986).

Williams does not contend that the district court's additional actions undertaken after the filing of the government's notice of appeal involved "remedial matters unrelated to the merits of the appeal." In fact, the district court itself, in its August 9 ruling, used language making clear that its resolution of the motion for reconsideration was an "expansion" of its prior ruling. The district court began its discussion of the issues presented in the motion by stating, "While Williams is entitled to a new trial under *Booker* and *Blakely*, this court now holds that he is also entitled to a new trial on another ground as well." Furthermore, in concluding the decision, the district court explained that "[i]n addition to and independent of the *Blakely/Booker* grounds articulated in this court's earlier opinion and order," Williams was entitled to a new trial because of the prosecution's failure to provide defense counsel with exculpatory or impeachment evidence.

Unable to argue that the filing of the notice of appeal did not divest the district court of jurisdiction because the district court's subsequent ruling was remedial only, Williams instead contends that the district court retained jurisdiction over his motion for

reconsideration because the government's notice of appeal was premature. Specifically, the defendant insists that the notice of appeal was filed prior to a final ruling on Williams's motion for judgment of acquittal and prior to a ruling on his claim that the United States withheld impeachment evidence from him. This argument is, however, patently without merit. In its February 4 ruling, the district court explicitly and unequivocally concluded, "Williams's motion for a new trial on the ground of the prosecution's alleged violation of *Brady v. Maryland* [doc. no. 139] and his motion for judgment of acquittal due to insufficient evidence [doc. no. 138] *are denied without prejudice.*" *Williams I*, 355 F. Supp. 2d at 910 (emphasis added). Consequently, although the district court did not address the merits of those claims, it clearly disposed of them in such a manner as to render the court's judgment a final, appealable order.

In a final effort to legitimize the district court's August 9 order granting a new trial on grounds not included in the prior order, the defendant maintains that the government's notice of appeal was prematurely filed because Williams's February 22 motion for reconsideration was still pending before the district court at that time. Without question, "a motion for rehearing in a criminal case, like a motion for rehearing in a civil case, renders an otherwise final decision of a district court not final until it decides the petition for rehearing." *United States v. Ibarra*, 502 U.S. 1, 6 (1991) (discussing *United States v. Healy*, 376 U.S. 75 (1964)). *See also United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006). The time for filing a notice of appeal in a criminal case is tolled, however, only if the

post-judgment motion is itself timely. *See United States v. Correa-Gomez*, 328 F.3d 297, 299 (6th Cir. 2003).

In *Correa-Gomez*, this court held:

> [A] motion for reconsideration or rehearing of a final judgment in a criminal case must be filed within the period provided by Fed. R. App. P. 4(b)(1) unless the local rules of the district court provide otherwise. Effectively, this means that criminal defendants must file such motions within ten days of the judgment entry, Fed. R. App. P. 4(b)(1)(A)(i), and the government must file such motions within thirty days. Fed. R. App. P. 4(b)(1)(B)(i).

*Id.* Pursuant to the provisions of Rule 26(a)(2) of the Federal Rules of Appellate Procedure, however, when the period of time provided by rule allots "less than 11 days" for any action, a party may exclude any weekend day or legal holiday from the calculation. Thus, because Williams had only ten days from the resolution of his motion for new trial on February 4 to request reconsideration, the defendant was actually allowed to file such motion within ten *business* days, or at any time up to and including February 18, 2005. His February 22 filing was, therefore, still untimely and ineffective in tolling the period of time before a proper notice of appeal could be filed.[1] The government's March 3 notice of appeal was, consequently, not premature and served to divest the district court of jurisdiction over this matter from that date forward. As a result, the district judge's August

---

[1]Williams contends that, although *his* motion for reconsideration was untimely, *Rohira's* similar motion was timely and should serve to bring before the district court any issues that *Williams* sought to advance. The defendant and Rohira are separate individuals, however, were convicted in separate trials, and were entitled to make separate decisions regarding the conduct of their post-trial proceedings. Williams was thus responsible for the timely filing of any motions he wished to have the court consider. No rule or precedent of this court would allow the defendant to "intervene" in Rohira's proceedings after the time for Williams to file his own post-trial motions had expired.

9 order was a legal nullity. Of course, because the district court originally denied without prejudice the defendant's motion for a new trial based upon alleged *Brady/Giglio* violations, Williams remains free to file any subsequent collateral attack upon his convictions that he deems proper.

## CONCLUSION

For the reasons set out above, we REVERSE the grant of a new trial in case number 05-3293, VACATE the judgment in case number 05-4160, REINSTATE Williams's convictions, and REMAND this matter for sentencing.