NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0484n.06

No. 14-5181

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 06, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANDREA RICHARDSON, individually and as the administratrix of the ESTATE OF LESLIE RICHARDSON, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| ROSE TRANSPORT, INC.; XTRA LEASE, LLC; and WABASH NATIONAL CORPORATION, | ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: DAUGHTREY, McKEAGUE, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. This tort action for negligence, negligence *per se,* products liability, loss of consortium, and wrongful death arose from a highway collision between a tractor trailer and a car driven by Leslie Richardson, who suffered serious injuries and died three years later. The initial negligence claims and the claim for loss of consortium were filed in Kentucky state court by Leslie Richardson and his wife, Andrea Richardson, shortly before his death. Named as defendants were XTRA Lease, LLC, which owned and maintained the trailer involved in the accident, and Rose Transport, Inc., which owned the tractor, employed the driver, and leased the trailer from XTRA Lease. The defendants removed the action to federal district court on the basis of diversity jurisdiction. After Leslie Richardson died, Andrea Richardson moved to amend the complaint to substitute the estate as

plaintiff; to add Wabash National Corporation, the designer and manufacturer of the trailer, as defendant; and to include wrongful death as a cause of action on behalf of the estate against all three defendants. The district court subsequently dismissed the complaint against Wabash National for failure to state a claim, after finding that the negligence, products-liability and wrongful-death claims against Wabash were time-barred, a decision now appealed by the plaintiffs. The court later granted summary judgment to Rose Transport and XTRA Lease on all claims against them, a decision also on appeal here.

## FACTUAL AND PROCEDURAL BACKGROUND

The National Highway Traffic Safety Administration requires most tractor-trailers to have an "underride guard," also known as a "rear impact guard" or "ICC bumper," which is a grid of steel bars that hangs down from the back end of the trailer and is designed to prevent a passenger car that collides with the rear of a tractor-trailer from sliding underneath it. In the absence of an underride guard, or if the trailer has a malfunctioning or defective underride guard, the windshield of a passenger car may absorb the brunt of a collision with the rear of a tractor-trailer. On September 25, 2008, Leslie Richardson was driving a four-door sedan on U.S. Route 127 through Mercer County, Kentucky, when he collided with the rear of a tractor-trailer. His car broke through the underride guard of the tractor-trailer and became wedged under the trailer. The tractor-trailer dragged the car for more than 1,000 feet before coming to a stop. Leslie suffered extensive injuries and was hospitalized for approximately one month. After the accident, he began receiving reparations for his injuries pursuant to Kentucky's Motor Vehicle Reparations Act, Ky. Rev. Stat. §§ 304.39-010-.39-040 (MVRA). He received his final payment on September 2, 2009.

Prior to the crash, Leslie Richardson had been treated by a psychiatrist for complaints of depression, mood disorder, possible bipolar disorder, and cannabis dependency. After the accident, he was treated for head injuries and became addicted to cocaine. In March 2009, he was admitted to a drug rehabilitation facility in Bowling Green, Kentucky, where his depression worsened. Two months later, he was admitted to a medical hospital for self-mutilation and cocaine abuse. Leslie was hospitalized several times thereafter for psychiatric problems, and in 2010 he was diagnosed with bipolar disorder, drug abuse, and mood disorder. On October 8, 2011, three years after the collision, Leslie overdosed on oxymorphone and died.[1] Following Leslie's death, his doctor concluded that Leslie's pre-existing mental health problems had worsened and that "it was extremely unlikely that Leslie Richardson would have died in the manner that he did . . . if he had not sustained significant brain damage" in the car accident.

On September 1, 2011, five weeks before Leslie died, he and his wife, Andrea Richardson, filed suit in Kentucky state court against XTRA Lease, which owned and maintained the trailer involved in the crash, and Rose Transport, which leased the trailer from XTRA, owned the tractor pulling the trailer, and employed the driver. The defendants removed the case to federal district court, invoking the court's diversity jurisdiction. After Leslie's death on October 8, 2011, Andrea moved to substitute her husband's estate as a party to the action. On November 1, 2012, she and the estate filed an amended complaint, adding Wabash National Corporation, the designer and manufacturer of the trailer, as a third defendant. The complaint as amended included claims against Rose Transport and XTRA Lease based on negligent

---

[1] The record is not clear as to whether his death was deliberately self-inflicted or accidental. The list of records reviewed by Leslie Richardson's doctor acting as an expert witness included a death certificate that supposedly indicated suicide as the cause of death. The death certificate itself, however, is not included in the record. Plaintiffs claim that Leslie's death "was not a 'suicide,'" but whether Leslie died due to suicide or accidental overdose is not material to the issues on appeal.

maintenance and negligence *per se* for failure to comply with federal regulations,[2] and claims

based on products liability, wrongful death, and loss of consortium against all three defendants.

In response, Wabash National filed a motion to dismiss for failure to state a claim,

arguing that the claims for loss of consortium, products liability, and wrongful death were

brought after the applicable statutes of limitations had expired. The plaintiffs moved to amend

their complaint a second time, but the district court denied leave and instead granted Wabash

National's motion to dismiss, holding that the one-year limitations period on Andrea

Richardson's claims for loss of consortium and products liability ran from the date of the

accident, not the date of Leslie Richardson's death. The court came to the same conclusion

regarding the two-year period applicable to the wrongful death claim under the MVRA,

explaining that "suicide is not within the class of injuries the MVRA was designed to protect."

In the wake of the court's ruling, Andrea Richardson voluntarily dismissed her claim for loss of

consortium against the remaining two defendants.

Rose Transport and XTRA Lease then moved for summary judgment, arguing that the

plaintiffs failed to offer any evidence to support their negligent-maintenance claim; that the

plaintiffs failed to offer any evidence of a statutory or regulatory violation, as required to support

their claim for negligence *per se*; and that XTRA Lease, as an end-user of the underride guard,

could not be held liable for a design defect traceable to the manufacturer. The plaintiffs then

moved to file a second amended complaint adding an additional claim of negligence against both

Rose Transport and XTRA, alleging that the companies negligently procured and leased the

Wabash trailer, and adding Rose Transport as a defendant to the products-liability claim. The

---

[2] The plaintiffs claimed that defendants "Rose Transport, Inc. and XTRA Lease, LLC, negligently failed to ensure that the trailer . . . was in compliance with one or more federal safety standards, including, but not limited to 49 C.F.R. 571.223 and 49 C.F.R. 571.224." These regulations specify the requirements for rear impact guards for trailers and semitrailers and for the installation of rear impact guards, respectively. The amended complaint does not explain how defendants violated these regulations.

defendants objected to the proposed amendments.  The district court granted summary judgment, concluding that the plaintiffs had failed to offer any evidence to support their negligent-maintenance claims against Rose Transport and XTRA Lease; that the amended complaint could not be read as raising a products-liability claim against Rose Transport; that the plaintiffs had failed to offer evidence that the trailer was defectively designed or manufactured; and that the wrongful death claim failed because the estate had offered no evidence of a wrongful or negligent act.  The district court also denied the plaintiffs leave to amend their complaint for a second time, finding that they had filed their motion to amend more than a year after the amendment deadline had passed, more than three months after the close of discovery, and just after the defendants filed a motion for summary judgment and, therefore, that the amendment would result in undue delay and would be prejudicial to the defendants, who were not on notice of the additional claims.

The plaintiffs now appeal the orders dismissing the complaint against Wabash National, the grant of summary judgment to the other two defendants, and the denial of their motion for leave to amend the complaint a second time.

## DISCUSSION

The defendants argue that Andrea Richardson is precluded from appealing from the voluntary dismissal of her loss-of-consortium claim against them.  Assuming that Andrea now has the right to appeal that dismissal, she ultimately loses on the merits because, as explained below, the district court correctly dismissed the loss-of-consortium claims against Wabash National and correctly granted summary judgment on the underlying negligence and products liability claims.

Kentucky law codifies a cause of action for loss of consortium "resulting from a negligent or wrongful act" of another. Ky. Rev. Stat. § 411.145(2). The statute of limitations for loss of consortium claims is one year. *See id.* § 413.140(1)(a). Even assuming that the discovery rule applies to a loss of consortium claim, the "lack of knowledge of the extent of [an] injury does not toll a statute of limitations . . . ." *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 500 (Ky. 1979); *see also Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972) (holding that "appellant's cause of action . . . accrued on the day he was injured in the school-bus accident, and limitations began to run from that date even though he was not made fully aware of the extent of his inj[u]ry until several years later"). Under Kentucky law, Andrea's loss-of-consortium claim accrued on the day of her husband's accident, nearly three years before she sued XTRA Leasing and Rose Transport and four years before she sued Wabash National.

Andrea nevertheless argues that a portion of her claim did not accrue until Leslie's death because the loss of consortium she suffered after that point constituted a "separate and distinct injury." She relies on *Martin v. Ohio County Hospital Corp.*, 295 S.W.3d 104 (Ky. 2009), in which the Kentucky Supreme Court held that loss of consortium damages do not cease at the spouse's death. *Id.* at 109. But that ruling does not mean that a *new* claim for loss of consortium accrues upon the death of the plaintiff's spouse, only that the single cause of action does not "terminate[] with the death of the spouse." *Id.* at 107. Because the district court correctly dismissed the claim for loss of consortium claim against Wabash National, the decision dismissing the same claim against the other two defendants must be upheld.

The district court also dismissed the estate's claims against Wabash National for negligence, products liability, and wrongful death. In Kentucky, personal injury claims must be brought within one year of accrual. Ky. Rev. Stat. § 413.140(1)(a). For victims of motor vehicle

accidents, however, the MVRA extends the limitations period to two years and allows for the time period to begin at a time other than when the accident occurs. As relevant here, "[a]n action for tort liability . . . may be commenced not later than two (2) years after the injury, or the death, or the last basic or added reparation payment . . . , whichever later occurs." Ky. Rev. Stat. § 304.39-230(6). If the MVRA limitations period runs from Leslie's death, the amended complaint was timely because it was filed less than two years later. If, as the district court concluded, the death does not revive the limitations period, the claims must be dismissed as untimely because they were filed more than three years after the last reparations payment.

We need not resolve this dispute, however. After the district court ruled on the motion to dismiss, it also granted summary judgment in favor of Rose Transport and XTRA Lease, finding that there was no evidence that the underride guard designed and manufactured by Wabash National was defective and, thus, no basis for the negligence, products-liability, or wrongful-death claims. If that ruling was correct, a remand would ultimately result in summary judgment in favor of Wabash National, as well. We conclude that the grant of summary judgment to Rose Transport and XTRA Lease was properly entered and that even if Wabash National had still been a party to the litigation at the time that summary judgment was granted, summary judgment would have been appropriate as to that defendant as well.

As the district court noted in connection with the negligent-maintenance claim, the record provides no evidence to support the estate's allegation that the underride guard was in a state of disrepair at the time of the accident. In arguing otherwise, the plaintiffs rely on the report and deposition of their expert, Dr. Batterman. But Batterman, whose opinions were directed primarily at the design defect issue, twice stated that there was no evidence showing that the guard was in disrepair:

Q: Do you have any evidence that that underride guard was poorly maintained by the owner of that trailer or the user of that trailer?

A: I have no evidence one way or the other.

\* \* \* \* \*

Q: And based on the information you have now, you have no evidence to suggest that this trailer underride guard was improperly maintained by the truck company or the trailer company that leased the trailer?

A: Based – that's correct. Based on the evidence I have now.

To undermine this clear testimony, the plaintiffs contend that Batterman viewed photographs of the underride guard and identified a portion of the guard with four bolt-holes but only three bolts. Because the trailer had been repaired since the accident, Batterman's investigation was limited to looking at 2008 photographs of the damaged underride guard and a 2012 in-person examination of the repaired guard. His testimony identifying the four-holes-three-bolts problem referred to the trailer as it appeared in 2012, not in 2008 after the accident. The plaintiffs' contention otherwise relies on a strained view of Dr. Batterman's testimony. The most that they could show is Batterman's suggestion that the section of the underride guard that "pulled away" in 2008 was close to where he saw the four-holes-three-bolts problem in 2012. But that observation is not probative evidence of disrepair in light of Batterman's clear statements otherwise. Because the plaintiffs did not produce any evidence that the underride guard was in a state of disrepair on the date of the accident, the district court properly granted summary judgment on the negligent maintenance claims.

The plaintiffs' products-liability claim against XTRA Lease and Wabash National fails as a matter of law because the plaintiffs did not produce sufficient evidence to allow a jury to find that the underride guard was defectively designed. Under Kentucky law, a plaintiff must "show

something more than it was theoretically probable that a different design would have been feasible" or that "a particular injury would not have occurred had the product which caused the injury been designed differently." *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 224 (6th Cir. 1996) (citations and internal quotation marks omitted). Rather, "the question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780 (Ky. 1984) (citation and internal quotation marks omitted). The plaintiffs concede that, at a minimum, the trailer met all applicable federal industry standards.

The plaintiffs' expert, Dr. Batterman, asserted that his accident-reconstruction studies show that "properly designed, practical and feasible, underride guards" could have prevented the underride that occurred in his case. His opinion that the underride guard that failed in the 2008 accident was defectively designed was based only on the fact that "it failed in an accident in which it should have worked." Batterman did not review the design and testing of the particular underride guard in question and did not investigate other underride guards available on the market. He thus did not produce any evidence of the specific ways in which the underride guard allegedly was poorly designed and how it should have been improved. Batterman also focused on deficiencies in the applicable federal standards, particularly 49 C.F.R. 571.224, but he did not provide evidence of another design that would have prevented or minimized the injury.

As the district court correctly concluded, this expert evidence is not enough to show that the underride guard was defectively designed. As a result, there is no way to hold Wabash National or XTRA Lease liable, even on a strict-liability theory. For these reasons, the district court correctly granted summary judgment on the products-liability claims.

The district court also ruled correctly on the wrongful-death claims. To recover for wrongful death under Kentucky law, a plaintiff must demonstrate that the decedent's death "result[ed] from an injury inflicted by the negligence or wrongful act of another. . . ." Ky. Rev. Stat. § 411.130(1). But as we have already determined, the plaintiffs were unable show that any of the defendants committed a wrongful or negligent act.

Finally, we conclude that the district court did not commit an abuse of discretion in the denial of the plaintiffs' motion for leave to file a second amended complaint. To decide whether a second amended complaint should be permitted, a court must consider several factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not a sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (citation and internal quotation marks omitted). The district court considered the relevant factors and, for the reasons stated in its opinion, did not commit an abuse of discretion in denying the motion for leave to amend.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.